IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**MIKE W. STROUD**                                                                             **PLAINTIFF**

**V.**                       **CASE NO.: 3:14CV00110 BD**

**CAROLYN W. COLVIN, Commissioner,**
**Social Security Administration**                                                 **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Mike W. Stroud has appealed the final decision of the Commissioner of the Social Security Administration denying his claim for disability insurance benefits and supplemental security income. Both parties have submitted appeal briefs and the case is ready for decision.[1]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and free of legal error. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); see also 42 U.S.C. §§ 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). In assessing the substantiality of the evidence, the Court has considered evidence that detracts from the Commissioner's decision as well as evidence that supports it.

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #4)

Mr. Stroud alleged that he became limited in his ability to work by seizures, osteoporosis, a disintegrating disc in the lower back, inflammation of the back, nerve damage to the right knee, left shoulder problems, and diabetes.  (SSA record at 51, 54)  After conducting an administrative hearing, the Administrative Law Judge[2] (ALJ) concluded that Mr. Stroud had not been under a disability within the meaning of the Social Security Act at any time through April 15, 2013, the date of his decision.  (*Id*. at 19)  On February 21, 2014, the Appeals Council denied the request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  (*Id*. at 1-3)  Mr. Stroud then filed his complaint initiating this appeal.  (Docket #2)

Mr. Stroud was 36 years old at the time of the hearing and lived with his mother.  (SSA record at 28-29)  He is a high school graduate and had past relevant work as a Certified Nurses Assistant (CNA).  (*Id*. at 29)  Mr. Stroud stopped working in September, 2011, because of a hernia, which was later surgically repaired.  (*Id*. at 30) After surgery, he did not attempt to find other work because of a stinging sensation in his right knee.  (*Id*.)

The ALJ found Mr. Stroud had not engaged in substantial gainful activity since September 29, 2011, his alleged onset date.  (*Id*. at 11)  He found that Mr. Stroud had "severe" impairments:  hypoparathyroidism, history of repaired inguinal hernias, and congenital fusion of the C2-3 cervical discs.  (*Id*.)  He further found that Mr. Stroud did

---

[2]The Honorable Toni Shropshire.

not have an impairment or combination of impairments that met or equaled a Listing. (*Id*. at 12) He judged that Mr. Stroud's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not totally credible. (*Id*. at 15-17)

Based on these findings, the ALJ concluded that Mr. Stroud retained the residual functional capacity for light work, but could only occasionally climb stairs, never climb ladders, and only occasionally kneel, crawl, balance, stoop, and crouch.

Based on testimony from a vocational expert (VE), the ALJ concluded that Mr. Stroud could not perform his past relevant work, but that he could perform other jobs that existed in significant numbers in the national economy.[3] (*Id*. at 18-19) Thus, the ALJ concluded that Mr. Stroud was not disabled. (*Id*. at 19)

**Listed Impairment**

In his appeal of the ALJ's decision, Mr. Stroud argues that the ALJ erred by finding that he had not met Listing 9.00(B)(3)[4] at step three.

Listing 9.00(B)(3) provides:

Parathyroid gland disorders affect calcium levels in bone, blood, nerves, muscle, and other body tissues. We evaluate parathyroid-related

---

[3] The VE identified two jobs that a person with Mr. Stroud's limitations could perform – office helper and sorter. (*Id*. at 19)

[4] In his brief, Mr. Stroud repeatedly refers to "Listing §9.03." Appendix 1 to subpart P of part 404, however, does not have a section 9.03. It appears that the applicable section for Mr. Stroud's case is section 9.00(B)(3). Accordingly, the Court will analyze whether the record supports Mr. Stroud's argument that he met the criteria for section 9.00(B)(3) for parathyroid gland disorders. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §9.00(B)(3).

> osteoporosis and fractures under 1.00; abnormally elevated calcium levels in the blood (hypercalcemia) that lead to cataracts under 2.00; kidney failure under 6.00; and recurrent abnormally low blood calcium levels (hypocalcemia) that lead to increased excitability of nerves and muscles, such as tetany and muscle spasms, under 11.00.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §9.00(B)(3). The ALJ found that Mr. Stroud's hypoparathyroidism was a severe impairment. (SSA record at 11) Accordingly, under section 9.00(B)(3), the ALJ considered whether Mr. Stroud met the criteria set forth in Listings 1.00, 2.00, 6.00 and 11.00. (*Id*. at 12) The ALJ's conclusion that Mr. Stroud did not meet listing 9.00(B)(3) is supported by substantial evidence.

Listing 1.00 for the musculoskeletal system, defines loss of function as "the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §1.00(B)(2)(a)

Mr. Stroud has not established an inability to ambulate effectively on a sustained basis. On several occasions his treating sources noted his normal gait, ability to ambulate, and regularly exercise. (*Id*. at 227, 259-260, 262, 270, 273-74)

Mr. Stroud testified to an inability to perform fine motor movements such as picking up coins off of the floor or picking up his credit card from a counter top at the store. (*Id*. at 37-38) The regulations define the impairment as "an extreme loss of

function of both upper extremities" and gives the following examples of inability to perform fine and gross movements effectively: "inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level." *Id*.

Nothing in the record suggests that Mr. Stroud had this level of impairment. He was able to take care of his personal needs, make his bed, clean his room, take out the trash, feed his pet, and drive. (*Id*. at 29, 171-174, 192)   This is not the level of impairment that meets the criteria necessary to satisfy the requirements of Listing 1.00.

Likewise, there is nothing in the record indicating that Mr. Stroud met the criteria for a visual disorder under Listing 2.00 or chronic kidney disease under Listing 6.00. While Mr. Stroud had a history of seizures, which are addressed in Listing 11.00, his physician reported that Mr. Stroud had not suffered a seizure since he began taking medication in 1991. (255-56, 259)

Mr. Stroud points to his endocrine readings from lab work performed on November 1, 2011 and November 7, 2011, but does not explain how these readings establish that he met the criteria of any Listing. The Court has reviewed Listing 9.00 for endocrine disorders but does not see any criterion relating to the lab reports highlighted by Mr. Stroud.

Mr. Stroud complains of paresthesias. While Mr. Stroud did report paresthesias at visits to his treating physician in November of 2011, on November 7, 2011, Dr. Davidson

noted that Mr. Stroud's hypoparathyroidism and hypocalcemia were stable. (262) Further, during visits to Lawrence County Family clinic in December 2012 and January 2013, Mr. Stroud reported chest pain and sinus problems, but not symptoms of hypoparathyroidism or paresthesias. (*Id*. at 302, 304-305)

There is substantial evidence in the record to support the ALJ's determination that Mr. Stroud did not have an impairment or combination of impairments that met Listing 9.00(B)(3).

**Vocational Expert Testimony**

Mr. Stroud complains that the ALJ erred by relying on the Vocational Expert's (VE) testimony at step five. Essentially, Mr. Stroud argues that the hypothetical relied on by the ALJ was inadequate because it did not encompass all of the limitations set forth in the medical source statement completed by Dr. Davidson, his treating physician. Mr. Stroud maintains that his inability to finger and feel eliminates the jobs of office helper and sorter identified by the VE. (#13 at p. 13)

In his medical source statement, Dr. Davidson opined that Mr. Stroud: could stand or walk for only 2 hours in an 8-hour day; sit for only 2 hours in an 8-hour day; needed to be able to change positions frequently and take longer than normal breaks; was unable to finger; must avoid all exposure to perfumes and soldering fluxes and avoid moderate exposure to solvents, cleaners, and chemicals; and would be absent more than 3 days per month due to his impairments. (296) The ALJ considered the statement but found the

restrictions inconsistent with Dr. Davidson's conservative treatment of Mr. Stroud, Mr. Stroud's infrequent reports of pain, and Dr. Davidson's consistent findings that Mr. Stroud was not in distress and had a normal gait. (*Id*. at 17)  The ALJ's decision to discount Dr. Davidson's medical source statement is supported by the record. (*Id*. 173, 259, 261, 263, 275, 285-92, 295, 300, 302, 304-305)

The ALJ's hypothetical fully set forth all of the impairments that the ALJ accepted as true and that were supported by the record as a whole. *Blackburn v. Colvin*, 761 F.3d 853, 860 (8th Cir. 2014).  The ALJ did not err by relying on the VE's testimony at step five.

**Conclusion**

It is not the task of this Court to review the evidence and make an independent decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which would support a different outcome.  The test is whether there is substantial evidence, on the record as a whole, to support the ALJ's decision. *Van Vickle v. Astrue,* 539 F.3d 825, 828 (8th Cir. 2008).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence.  There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401. The Commissioner's decision is not based on legal error.

The final determination of the Commissioner is AFFIRMED, and Mr. Stroud's complaint is hereby dismissed with prejudice. The oral argument hearing scheduled for February 12, 2015, at 10:00 a.m. is canceled.

IT IS SO ORDERED this 7th day of January, 2015.

_____
UNITED STATES MAGISTRATE JUDGE